**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**TERRELL PETERSON,**

    **Defendant.**

Case No. 1:22-cr-108
JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

Terrell Peterson, a criminal defendant charged with possession of a firearm by a prohibited person, seeks to suppress evidence of the gun found when officers searched him. For the reasons below, the Court **DENIES** Peterson's Motion to Suppress (Doc. 19).

**BACKGROUND**

The story starts with Christopher Martin, who is a felon on probation.[1] On September 8, 2022, Martin's probation officer, Adam Howard, and Howard's partner, Brandon Mossburger, went to Martin's house in the Westwood area of Cincinnati to conduct a home visit. (Doc. 22, #54–55). When the officers discovered Martin was not

---

[1] Both parties refer to Martin as a "probationer." It is not clear, though, whether they mean that he was serving a period of probation (i.e., supervision in lieu of incarceration), or whether he was serving a period of supervised release (i.e., supervision after a term of incarceration). That turns out to be immaterial for the questions presented here, both as a matter of the Constitution, and as a matter of Ohio law. As to the latter, compare Ohio Rev. Code. § 2951.02 (which applies to people sentenced to probation) with Ohio Rev. Code § 2967.131 (which applies to people on post-release control), both of which require "reasonable grounds" for a search. The Court, like the parties, will refer to Martin as on probation.

at home, they headed back to their normal patrol area in the Over-the-Rhine neighborhood. (*Id.*).

After traveling 3 or 4 miles, they saw Martin sitting in a folding camp chair, in a crime-ridden area that they had repeatedly warned him to avoid. (*Id.* at #55–56, 82). He was there, in the middle of a workday, having never reported employment in the area, despite the condition of his probation requiring him to report any full-time employment. (*Id.* at #57, 83, 86). When Martin saw the probation officers, he leapt up, moved away from his belongings (including a cinch bag), and began sweeping a street corner with a broom. (*Id.* at #56, 58). Based on his behavior, they suspected that he might be violating the law and his conditions of probation. So they stopped to search him and his bag. (*Id.* at #57–58). The bag contained drug paraphernalia—namely, "baggies" that are often used to distribute narcotics and a digital scale—and he had a car key in his pocket. (*Id.* at #58, 83).

The officers asked Martin about the key, and he told them it was to his nearby car. (*Id.* at #58). Officer Howard also knew the car was linked to Martin from a previous traffic ticket. (*Id.*). Martin then invited the officers to search his car. (*Id.* #89, 91). In doing so, he mentioned that someone was in there. (*Id.* at #59). As the officer approached the vehicle, they noticed that someone indeed was sleeping in the passenger side of the car—Peterson. (*Id.*). With one officer on each side of the car, they banged the doors several times to rouse him. (*Id.* at #59–60). When he woke up, they told him he needed to exit the car so they could search it. (*Id.* at #60). He refused. (*Id.*). As Howard repeatedly tried to unlock the doors with the key, Peterson kept re-

2

locking them. (*Id.*). He also moved his hand to his waist, which Howard interpreted as "indication of trying to hide something and possibly a weapon there." (*Id.* at #60, 76).

Finally, the officers managed to open the car door and remove Peterson. (*Id.* at #77). Based on his behavior, they suspected that he too might be violating the law, and that there may be "officer safety concerns," so they did a "cursory pat-down." (*Id.* at #60–61, 63). They found a weapon in his hoodie pocket. (*Id.* at #61–62). They called the police, who took him into custody. (*Id.* at #62). A grand jury later indicted Peterson for possession of a firearm by a prohibited person. (Doc. 1).

Peterson now moves to suppress the gun they discovered during that search, arguing that the search violated his Fourth Amendment rights. (Doc. 19, #37). The government opposes this motion. (Doc. 20). The Court held a hearing on the issue, where it heard testimony from both officers and arguments from counsel. (Doc. 22). The parties then also filed post-hearing briefs. (Docs. 26, 28, 30). The matter is now ripe for review.

## LAW AND ANALYSIS

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. To protect this right, courts will suppress "evidence obtained in violation of the Fourth Amendment [from] be[ing] used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347 (1974). In most cases, Fourth Amendment rights are "preserved by a requirement that searches be conducted pursuant to a warrant issued by an

independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). But various exceptions exist that can make a search "reasonable," and thus permissible under the Fourth Amendment, even without a warrant.

One such exception is the *Terry* stop, when an officer stops someone after "observ[ing] unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A *Terry* stop requires the officer have "[r]easonable suspicion … based on the totality of the circumstances." *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999). And "[r]easonable suspicion … require[es] 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person ... of criminal activity.'" *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

There are three relevant searches here—the search of Martin, the search of the car, and the search of Peterson. The first two were factual prerequisites for the third one, which Peterson challenges. So the two preceding searches arguably must be lawful for the third one to be.[2] They all are.

**A. Martin**

"When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly

---

[2] There is a question of whether, even if the first search were illegal, the second two might remain legitimate, given that Martin gave consent to the search of his car. The parties disagree on that point. This will be explored later on.

4

diminished privacy interests is reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001).

Martin is subject to a search condition that allows searches when a parole officer has "reasonable grounds" to believe that he is violating the law or the terms of his probation.[3] (Doc. 28, #166); *see also* Ohio Rev. Code § 2967.131(C). And the circumstances the officers faced that morning provided reasonable grounds to believe that Martin was engaged in criminal activity. They knew he had a history of probation violations. (Doc. 28, #166). The officers went to check on him at his home. (Doc. 22, #55). He wasn't there. (*Id.*). They checked East McMicken Avenue, a high crime area 3 or 4 miles away that he frequents, despite officers repeatedly telling him not to. (*Id.* at #55–56, 82). He was there, lounging in a camp chair, in the middle of a workday, having reported no work there, despite the condition of his probation requiring him to report any full-time employment. (*Id.*). As soon as Martin saw the officers, he immediately stood up, moved away from his belongings (including a cinch bag), and started sweeping a part of the street corner with a broom. (*Id.* at #56). While perhaps a close call, the totality of these circumstances strike the Court as sufficient to provide reasonable suspicion to believe that Martin was engaged in criminal behavior, making the search compliant with the Fourth Amendment. *See Knights*, 534 U.S. at 121.

---

[3] Ohio's "reasonable grounds" standard in Ohio Rev. Code § 2967.131(C) mirrors the federal "reasonable suspicion" standard discussed earlier in the Fourth Amendment context, and thus the statute "passes constitutional muster." *United States v. Loney*, 331 F.3d 516, 521 (6th Cir. 2003).

Peterson says otherwise. He argues that Martin loitering in a high crime area and sweeping is not enough to give the officers reasonable suspicion that Martin was breaking the law, particularly when there is no violation of supervision. (Doc. 26, #145, 147). He compares this case to *Payne*, where the Sixth Circuit reversed a denial of a motion to suppress, holding that a six-week-old tip that the parolee had drugs, combined with knowledge of his criminal history, the parolee leaving his job without telling his parole officer, and the parole officer hiding from the officers coming to arrest him, was not enough to arouse reasonable suspicion. (*Id.* at #147 (citing *Payne*, 181 F.3d at 787, 789)).

But as the Sixth Circuit later observed, when an officer "[does] not rely solely on Defendant's criminal ... record" and instead relies on "extensive personal knowledge of Defendant's repeated" compliance issues while "under his direct supervision," *Payne* is unavailing. *United States v. Loney*, 331 F.3d 516, 522 (6th Cir. 2003). Just so here. The parole officers relied on more than just Martin's criminal record or a stale tip. As Martin's probation officer, Howard personally knew that (1) Martin consistently had trouble complying with his probation conditions, (2) he often hung out in a high crime area despite repeated warnings, (3) he did not have any reported employment that would bring him to that area, and (4) he moved away from his belongings when he saw the officers and began sweeping the sidewalk.

Moreover, "unlike *Payne*, the present case does not involve overtones that regular law enforcement officers, in effect, usurped a parole officer's ability to conduct a special needs search based on less than probable cause." *Id.* Here, it was probation

6

officers, including Martin's own probation officer, who did the search pursuant to their duty to supervise him.

Taking the record as a whole, there is a "combination of suspicious factors" which, collectively, give rise to reasonable suspicion justifying the search of Martin himself. *See United States v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007) (citing *United States v. Arvizu*, 534 U.S. 266 (2002)) (noting that "a combination of suspicious factors, including a van traveling on a known smuggling route in a remote area, the driver slowing down upon noticing the officer, and the passengers possibly concealing cargo by having their knees raised, all gave rise to reasonable suspicion").

**B.    The Car**

Probation officers are allowed to search a probationer's car without a warrant when (1) the officers "have reasonable grounds to believe that" he "is not abiding by the law" or "is not complying with the terms and conditions" of his probation; or (2) the probationer "provides consent for the search." Ohio Rev. Code § 2967.131(C)(1)(a), (c). Both options work here.

Start with the first. As explained earlier, the officers had reasonable grounds to believe that Martin was not abiding by the law and his conditions of probation, and thus searched him. That search produced more evidence—drug paraphernalia—that gave additional grounds to believe he was not abiding by the law and his conditions of probation. (Doc 22, #58). This alone empowers the officers to search his car. *See* Ohio Rev. Code § 2967.131(C)(1)(a). But beyond that, Martin *consented* to the car search. (*Id.* at #89, 91).

7

Peterson disagrees on both fronts. As to the first, he claims the officers lacked reasonable grounds. Then, citing *Payne*, Peterson says that means Martin's consent did not allow the search of the car. (Doc. 26, #148–49). That argument fails for two reasons. First, as the Court concluded above, the officers had reasonable grounds to believe Martin was violating the terms of his probation. But even if they didn't, the consent to search the car is still valid. *See United States v. Lee*, 793 F.3d 680, 685 (6th Cir. 2015).

*Payne* is not to the contrary. There, the Sixth Circuit held that "without reasonable suspicion there was never a justification for the officers to be in the places from which they observed the incriminating items." 181 F.3d at 791. So any evidence discovered based on their presence was obtained illegally, even if obtained consensually at the time. In a sense, it was their very presence that violated the Constitution, so any consent they obtained while there did not cure the problem. Here, though, the probation officers did not need reasonable suspicion to justify observing Martin or the car. They had every right to approach Martin and talk to him. He is their probationer, lounging in a public place. They could clearly see the car, parked on a public street, when they approached him. And under Ohio Rev. Code § 2967.131(C)(1)(c), Martin could give consent for them to search it. No search of Martin needed to take place at all for the officers to search the car.

**C.    Peterson**

When an officer has reason to believe that a defendant "was involved in unlawful drug activity and saw him reach … as if to place or retrieve a weapon," the

8

officer "ha[s] a reasonable belief that [the defendant] might be armed" sufficient to justify a *Terry* style pat-down search. *See United States v. Southard*, 20 F. App'x 304, 306 (6th Cir. 2001).

The officers saw Peterson in the car belonging to someone they had just caught with drug paraphernalia, in a known drug-trafficking area. (Doc. 22, #72–73). He refused to exit the vehicle. (*Id.* at #96). In fact, Peterson seemingly repeatedly locked the car to keep them out (despite them having permission to search). (*Id.* at #76, 96). And he reached his hands to his waist, as if stowing a weapon, while trying to prevent the officers' entry. (*Id.* at #60, 76). As in *Southard*, this is enough to give the officers a reasonable belief that he was armed. Thus, after they finally got him out of the car, a pat-down search was permissible under *Terry* and suppression of any evidence from that search is unwarranted.

Peterson presses two arguments to the contrary. First, he says they seized him when they approached the car, before they had all that information (in particular the information about him reaching toward his waist), and that this seizure was thus unlawful. (Doc. 26, #130–33). That misstates when the seizure happened. Even if officers assert authority, a seizure does not occur until the subject yields. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). In a typical traffic stop, that's pretty much the moment after a cop flashes his lights, when a car pulls over in response. In a foot chase, it would be when a criminal tires out, stops, and raises his hands. Here, by contrast, Peterson was actively keeping the officers out of the car. (Doc. 22, #76, 96).

9

He did not yield until well into the encounter, after he made furtive movements to his waist. (*Id.* at #60, 76).

Second, Peterson says that, even having seen the movements and his presence in the high-crime area, the officers did not have reasonable suspicion to search him. (Doc. 26, #137). If that's all they had, he'd be right. (*See id.* at #138 (citing *United States v. Sawyers*, 74 F. Supp. 2d 784, 789 (M.D. Tenn. 1999)) (noting that "furtive movements of the hands *alone* fail to justify a warrantless seizure and search")). But the officers had more than that. Again, they'd seen him try to keep them out of a car they had the right to search. And they knew he was in the company of a probationer who possessed drug paraphernalia, suggesting potential involvement in drug trafficking activities. So, as *Southard* suggests, they had reasonable suspicion that those furtive movements were his attempt to stow a weapon—at least enough to justify a cursory pat-down. And although irrelevant to the analysis, it turns out they were right.

## CONCLUSION

For the reasons above, the Court **DENIES** Peterson's Motion to Suppress (Doc. 19).

**SO ORDERED.**

July 20, 2023
**DATE**

**DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE**